IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| INTERNATIONAL MASONRY TRAINING AND EDUCATION FOUNDATION, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>HAWAII MASONS' TRAINING FUND, *et al.*,<br><br>Defendants. | Civ. No. 19-00206 JMS-KJM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, ECF NO. 38 |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, ECF NO. 38

## I. INTRODUCTION

Plaintiffs International Masonry Training and Education Foundation ("IMTEF") and its Board of Trustees ("IMTEF Trustees") (collectively, "Plaintiffs") have alleged violations of state and federal laws against Defendants Hawaii Masons' Training Fund *a/k/a* Hawaii Masons' and Plasterers' Apprenticeship and Training Fund ("Hawaii Fund"), and its trustees, Peter Iriarte, Tryson Mook, Albert Mandac,[1] Francis Pascual, Darlean Kiyokane, Glen

---

[1] Because the parties agree that Mandac is no longer a trustee for the Hawaii Fund, the claims against Mandac are dismissed without prejudice.

Kaneshige, Claude Matsumoto, and Michael Mazzone ("Defendant Trustees") (collectively, "Defendants"). Specifically, Plaintiffs argue that Defendants violated a collective bargaining agreement ("CBA"), entered between International Union of Bricklayers and Allied Craftworkers, Local #1 of Hawaii, AFL-CIO ("the Union") and the Contractors Association of Hawaii, an association of contractors, or contractor employers directly ("the Contractors"), by not forwarding contributions made to Plaintiffs' fund, as agreed upon in the CBA.

Before the court is Defendants' Motion to Dismiss. ECF No. 38. Based on the following, the court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

## II. <u>BACKGROUND</u>

**A.    Factual Background[2]**

IMTEF is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") § 3(1), 29 U.S.C. § 1002(1), an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and an multiemployer plan within the meaning of ERISA

---

[2] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

§ 3(37)(A), 29 U.S.C. § 1002(37)(A), which was "established and maintained for the purpose of providing apprenticeship training and educational benefits to eligible participants." Compl. ¶ 8, ECF No. 19-1. IMTEF is also a jointly-administered trust fund established pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5). *Id.* The IMTEF Trustees are fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). *Id.* ¶ 9.

Defendant Hawaii Fund is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), an employee benefit plan within ERISA § 3(3), 29 U.S.C. § 1002(3), and a multiemployer plan within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A). *Id.* ¶ 10. Defendant Trustees are members of the Board of Trustees of the Hawaii Fund. *Id.* ¶ 11.

Pursuant to the CBA between the Union and the Contractors, each Contractor must make "payments to the various Trust and other Funds, as specified in [the CBA]." Defs.' Ex. 1, ECF No. 38-2 ("The CBA") at § 14(A)(1). The CBA outlines five Funds to which the Contractors are required to contribute. Of relevance here is the "Apprenticeship and Training Fund," which requires the following contributions:

F.    Apprenticeship and Training Fund

1.    Each Contractor shall participate in the Hawaii Masons' and Plasterers' Apprenticeship and Training Trust Fund (hereinafter referred to as the ["the Hawaii Fund"]) under the terms and conditions as set forth in the Hawaii Masons' Training Fund Declaration of Trust Agreement as executed December 28, 1977, and as it may be amended in the future.
. . .
Effective August 31, 2015, for Apprentices indentured on or after September 1, 2003, from the above amounts, IMI contributions shall be made pursuant to and as set forth as in Section 14.F.4.

4.    International Masonry Institute ("IMI").  Effective August 31, 2015, each Contractor shall contribute to IMI on behalf of each employee covered by this Agreement, one percent (1 %) of the total hourly wage and benefits package.  These contributions shall be paid to [the Hawaii Fund] in the same manner as other Trust Fund contributions as set forth in Section 14, Section I of this Collective Bargaining Agreement.

The CBA at § 14(F).[3]  The CBA was subsequently amended to replace "IMI" with

"IMTEF."  Defs.' Ex. 3, ECF No. 38-4.  Based on this provision, "it was

_____

[3]  In support of their Motion to Dismiss, Defendants attach three exhibits: the CBA, ECF No. 38-2; the Hawaii Fund's Declaration of Trust, ECF No. 38-3; and the Memorandum of Understanding formally amending the CBA, ECF No. 38-4.  Defendants argue that the court may consider all these documents because the CBA is explicitly referenced and thus is incorporated into the Complaint; the Declaration of Trust is explicitly referenced and incorporated into the provision of the CBA at issue and thus an extension of the CBA; and the Memorandum of Understanding is a formal amendment to the CBA.  Plaintiffs do not oppose the court's consideration of Exhibits 1 or 3, but argue that Exhibit 2, the Declaration of Trust, was not referenced in their Complaint.  *See* Opp'n at 18, n.3, ECF No. 40.

(continued . . .)

understood by all parties that this provision was intended to require employers to pay their IMTEF contributions to the Hawaii Fund, and that the Hawaii Fund would then forward said contributions to the IMTEF." Compl. ¶ 15. Neither the Hawaii Fund nor IMTEF are signatories to the CBA. *See id.* ¶ 12 (listing parties to the CBA).

The Hawaii Fund "has accepted at least $430,770 in contributions intended for the IMTEF from employers who made such contributions under the belief and with the expectation that the Hawaii Fund would forward those contributions to the IMTEF on behalf of the employers." *Id.* ¶ 16. But the Hawaii Fund has not forwarded any of these contributions to IMTEF. *Id.* ¶¶ 18, 20.

## B.    Procedural Background

Plaintiffs filed their Complaint in the United States District Court for the District of Maryland on October 26, 2018. *See* ECF No. 19-1. Plaintiffs assert two federal claims: that the Hawaii Fund violated ERISA for delinquent

---

Exhibits 1 and 3 are appropriately incorporated by reference into the Complaint because they "form[] the basis of the plaintiff's claim," and the court can consider such documents with a motion to dismiss without converting it into a summary judgment motion. *Steinle v. City and Cty. of San Francisco*, 919 F.3d 1154, 1162-63 (9th Cir. 2019). But, the Declaration of Trust does not form the basis of, and is not incorporated by reference into, Plaintiffs' Complaint. The court thus declines to consider the Declaration of Trust in ruling on the Motion. Further, Defendants attach three additional exhibits with their Reply, *see* ECF Nos. 41-1, -2 & -3. Because these exhibits are not referenced in, and do not form the basis of, the Complaint, the court will also not consider these in ruling on the instant Motion.

contributions under §§ 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1145 (Count I) and that all Defendants violated ERISA for breaches of their fiduciary duties under §§ 409, 502(a)(2) of ERISA, 29 U.S.C. §§ 1109, 1132(a)(2) (Count II). *See* Compl. ¶¶ 22-43. Plaintiffs also assert state law claims of conversion, breach of fiduciary duty, and tortious interference with contractual relations against all Defendants (Counts III-V), and unjust enrichment against the Hawaii Fund (Count VI). *See id.* ¶¶ 44-76.

On January 4, 2019, Defendants filed motions to transfer venue to the District of Hawaii and to dismiss Plaintiffs' Complaint. ECF No. 19-7. On April 3, 2019, the United States District Court for the District of Maryland granted Defendants' motion to transfer to the District of Hawaii. *See* ECF No. 19-13 ("Transfer Order"). In so doing, it did not reach the merits of Defendants' Motion to Dismiss. Transfer Order at 1, n.1. Presently before the court is Defendants' Motion to Dismiss, re-filed in this district on July 3, 2019. ECF No. 38. Plaintiffs filed their Opposition on July 31, 2019. ECF No. 40. Defendants filed their Reply on August 20, 2019. ECF No. 41. A hearing was held on October 1, 2019.

# III. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet—that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer

"the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 679.

## IV. <u>DISCUSSION</u>

**A.     Plaintiffs' ERISA Claims (Counts I & II)**

As an initial matter, Defendants argue throughout the briefing that the Complaint does not plausibly allege that the Hawaii Fund was required to remit payments to IMTEF under the CBA. *See e.g.,* Mot. at 2. The court disagrees.

Specifically, Defendants claim that the CBA does not explicitly require the Hawaii Fund to remit any contributions to IMTEF, and that Plaintiffs' allegation that the parties understood that the CBA was intended to require the Hawaii Fund to remit the payments to IMTEF is an "unsupported conclusory allegation." *Id.*

But, for purposes of this Motion, a plausible reading of the CBA supports Plaintiffs' position. The CBA requires that each Contractor "shall contribute to IMTEF on behalf of each employee" and that "[t]hese contributions shall be paid" to the Hawaii Fund. The CBA § 14(F)(4). Although the language does not specifically direct the Hawaii Fund to remit the contributions to IMTEF, the inclusion of the statement that Contractors "shall contribute to IMTEF" and that *these* contributions are paid to the Hawaii Fund, highly suggests that the

Hawaii Fund was required under the CBA to forward the contributions it received to IMTEF.  In fact, if the funds were intended to remain with the Hawaii Fund, it would be odd to include the requirement that each Contractor "shall contribute to [IMTEF] on behalf of each employee."  *See id.*

With this background, the court turns to the specific ERISA arguments raised in the Motion to Dismiss.  Plaintiffs allege that the Hawaii Fund's and its trustees' failure to forward the contributions violated ERISA in two ways:  (1) that this constituted delinquent contributions under § 515 of ERISA, 29 U.S.C. § 1145; and (2) that this violated Defendants' fiduciary duties as IMTEF fiduciaries under ERISA.  For the reasons stated below, the court finds that Plaintiffs have failed to allege sufficient facts to show Defendants were "employer[s]" under ERISA for purposes of their delinquent contributions claim, but have alleged sufficient facts that Defendants were IMTEF's fiduciaries for purposes of ERISA.  The court addresses each count in turn.

### 1. *Count I: Delinquent Contributions Claim Against the Hawaii Fund*

ERISA requires that:

> Every employer who is obligated to make contributions
> to a multiemployer plan under the terms of the plan or
> under the terms of a collectively bargained agreement
> shall, to the extent not inconsistent with law, make such

> contributions in accordance with the terms and conditions
> of such plan or such agreement.

ERISA § 515, 29 U.S.C. § 1145. An "employer" is defined as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5). Typically, an entity or person is acting "indirectly in the interest" of an employer if they are the alter ego or the parent company, or if there is piercing of the corporate veil. *Trs. of Screen Actors Guild-Producers Pension and Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776-77 (9th Cir. 2009) ("If the non-signatory company is really the same as the signatory company, then it is fair to say that the purported non-signatory is actually a signatory."). "Absent some type of agency or ownership relationship, or direct assumption of an employer's obligations, an entity is not considered to be acting 'in the interest of' an employer for purposes of section 515." *Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 280 (2nd Cir. 2014) (*citing Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 575-76 (2d Cir. 1995)).[4]

---

[4] The parties have not identified Ninth Circuit case law articulating a specific standard for third-parties who have an "indirect interest" of an employer, outside the context of an alter ego or parent company relationship. *See e.g., Trs. of Screen Actors Guild-Producers Pension and Health Plans*, 572 F.3d at 776 (providing a non-exhaustive list of examples). *Silverman* is both helpful and persuasive. That is, this court adopts *Silverman's* formulation that an entity is not

(continued . . .)

Even if third-parties (that is, non-signatories to a CBA) separately agree outside the CBA to accept contributions of signatories, courts have held that this is insufficient for that third-party to be acting indirectly in the interest of an employer. *See Carpenters Health & Welfare Trs. Fund for Cal. v. Tri Capital Corp.*, 25 F.3d 849, 855-56 (9th Cir. 1994) ("*Tri Capital Corp.*") (finding that multiemployer employee benefit plans' action seeking recovery from subcontractor's unpaid plan contributions fails because the subcontractor, a non-signatory to the CBA, agreed to pay contributions pursuant to a separate contract, and thus, was not an "employer" under ERISA), *overruled on unrelated grounds in S. Cal. IBEW-NECA Tr. Funds v. Standard Indus. Elec. Co.*, 247 F.3d 920, 928 (9th Cir. 2001);[5] *see also Bleiler v. Cristwood Consts., Inc.*, 72 F.3d 13, 16 (2nd Cir. 1995) ("Our decision is consistent with decisions of other circuits [including the Ninth Circuit] that contractors who are not signatories to collective agreements, but who assume financial guarantees of contribution payments, do not qualify as

---

acting in the interests of an employer absent "some type of agency or ownership relationship, or direct assumption of an employer's obligations."

[5] Citing *Tri Capital Corp.*, 25 F.3d at 860, Plaintiffs' assert that the term "employer" in § 1145 should be read broadly. *See* Opp'n at 6. But, without informing the court, this discussion in *Tri Capital Corp.* is set forth in the dissent, not the majority opinion. Plaintiffs' counsel is cautioned to be more careful in the future.

ERISA employers."); *Schembre v. New Constr. Res., LLC*, 2006 WL 1134474, at

*4 (E.D. Mo. Apr. 25, 2006) (collecting cases for the same proposition).

Here, Plaintiffs attempt to distinguish this general rule because the

CBA, according to Plaintiffs, requires the Hawaii Fund to forward contributions to

IMTEF; thus, such obligation stems from the CBA itself and not some other

agreement. *See* Opp'n at 12 ("Plaintiffs seek to impose the obligation created by

the CBAs for the Hawaii Fund to forward contributions to IMTEF.").  And the

court agrees that the CBA here is materially different than those in cases such as

*Tri Capital Corp.*  The CBA here, according to Plaintiffs, itself requires the Hawaii

Fund to forward contribution payments.  *See Tri Capital Corp.*, 25 F.3d at 856

(reasoning that the non-signatory, third-party was not an "employer" because the

agreement to pay contributions stemmed from a separate contract and thus

"derive[d] from state third-party beneficiary law, not the plan or the collective

bargaining agreement"); *Bleiler*, 72 F.3d at 15 (noting third-party obligation "is

entirely the result of the joint and several liability established in the bond contract"

and not the collective agreement).

Nevertheless, Plaintiffs' argument still falls short.  Even viewing the

CBA in the light most favorable to Plaintiffs—that the CBA requires the Hawaii

Fund to forward contributions to IMTEF—merely being referenced in the CBA

does not signal the Hawaii Fund's intent to directly assume any obligations of the contributing employers. At most, it signals the Union's and the Contractors' intent for the Hawaii Fund to assume the employers' obligation to contribute to IMTEF. While the CBA may require the Hawaii Fund to remit contributions to IMTEF, the Hawaii Fund is not a party to the CBA. Plaintiffs have not pled facts showing how the Hawaii Fund, as a non-signatory to the CBA, has acquiesced to this specific CBA provision, or otherwise obligated itself to follow the terms of the CBA, thereby demonstrating that it intended to be bound by the terms of the CBA. *See Silverman*, 761 F.3d at 286 (noting in dicta that "[t]he CBAs do provide that from and out of the contributions made to the 210 Fund, a portion shall be unconditionally and irrevocably allocated and paid to the Union Mutual Medical Fund. Whether this provision contractually obligated the 210 Fund, a non-signatory to the CBAs, to remit these funds to the UMM Fund is a question of contract law heavily litigated in the district court") (internal citations omitted).

Plaintiffs have not pled sufficient, non-conclusory facts showing that the Hawaii Fund directly assumed an obligation to follow the CBA and thus directly assumed an obligation to pay employer contributions to IMTEF pursuant to the CBA, as opposed to merely pleading facts showing that signatories of the CBA may have intended the Hawaii Fund to forward contributions to IMTEF.

Defendants' Motion to Dismiss as to Count I (Delinquent

Contributions) is GRANTED, with leave to amend.

**2.    *Count II: Breach of Fiduciary Duty Claim Against All Defendants***

The fiduciary duty under ERISA is broadly recognized, and construed

"liberally, consistent with ERISA's policies and objectives." *Ariz. State*

*Carpenters Pension Tr. Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir. 1997)

(noting that ERISA "requires a broad definition of fiduciary").  Under ERISA:

> a person is a fiduciary with respect to a plan to the extent
> he exercises any discretionary authority or discretionary
> control respecting management of such plan or exercises
> any authority or control respecting management or
> disposition of its assets.

28 U.S.C. § 1002(21)(A)(i).  "'Any' control over disposition of plan money makes

the person who has the control a fiduciary." *Patelco Credit Union v. Sahni*, 262

F.3d 897, 909 (9th Cir. 2001) (quoting *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d

1415, 1421 (9th Cir. 1997)); *see also Yeseta v. Baima*, 837 F.2d 380, 386 (9th Cir.

1988) ("[A] fiduciary includes a person who 'exercises any authority or control

respecting management or disposition of [a plan's] assets.'") (quoting 28 U.S.C. §

1002(21)).  "ERISA defines fiduciary not in terms of formal trusteeship but in

*functional* terms of control and authority over the plan." *Johnson v. Couturier*, 572

F.3d 1067, 1076 (9th Cir. 2009) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248,

262 (1993)) (internal quotation marks omitted).  Thus, ERISA fiduciaries are not

limited to "only those specifically named in the employee benefit plan . . . ."

*Johnson*, 572 F.3d at 1076; *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d

833, 837 (9th Cir. 2018) ("[A] party not named in the plan [can also] become[] a

fiduciary . . . .  Such non-named fiduciaries are sometimes referred to as

'functional' fiduciaries.") (citations and quotation marks omitted).

Plaintiffs argue that Defendants are functional fiduciaries of IMTEF.

Opp'n at 15-17.  The Complaint alleges that the contributions from employers

made to the Hawaii Fund constitute plan assets under ERISA.  Further, because the

Hawaii Fund is retaining such contributions and not forwarding them as required

by the CBA, it (and its trustees) "control" such assets, and as such, they are

fiduciaries of IMTEF and have breached their fiduciary duties by not acting in

IMTEF's interest by failing to remit such contributions to IMTEF.  Compl. ¶¶ 30-

37.

Defendants do not appear to dispute that such contributions are "plan

assets"; rather, they argue that they cannot be fiduciaries of IMTEF because they

are fiduciaries of the Hawaii Fund.  Being fiduciaries of IMTEF, they argue, would

directly conflict with their duties as fiduciaries of the Hawaii Fund, noting that

"'ERISA . . . requires . . . that the fiduciary with two hats *wear only one at a time*,

and wear the fiduciary hat when making fiduciary decisions.'" Mot. at 15 (citing

*Acosta v. Brain*, 910 F.3d 502, 517 (9th Cir. 2018)). They specify that the Hawaii

Fund Declaration of Trust (which the court will not consider in ruling on the

instant Motion) strictly prohibits them from receiving or forwarding contributions

on behalf of another trust, thus, they cannot also be IMTEF's fiduciaries. *See* Mot.

at 15-16. This argument fails.

First, *Acosta* is inapposite. *Acosta* holds that an individual may take

on multiple roles (i.e., be both an employer *and* a fiduciary), *Acosta*, 910 F.3d at

517, but, when an individual is acting in her capacity as a fiduciary (i.e., donning

the fiduciary hat), that individual is required to make decisions solely in the

interest of the plan. *Id.* But when the individual is donning her "employer" hat,

that individual can "still take actions to the disadvantage of employee

beneficiaries." *Id.* *Acosta* does not preclude a fiduciary of one trust fund from

becoming a fiduciary of another trust fund—an individual could be a fiduciary of

multiple funds. Rather, Plaintiffs allege that Defendants must wear their "IMTEF

hat" and remit payments in IMTEF's sole interest when wearing the "IMTEF

fiduciary hat." Contrary to Defendants' assertion that being a fiduciary of one

fund absolves them from liability to the other fund, such situation may signal a

more precarious situation for said "dual-fiduciary" who must now carefully juggle loyalties to multiple masters without breaching their duties as to each fund.

Further, even if the court could properly consider the Declaration of Trust in ruling on the instant Motion, whether a requirement to forward contributions would be in breach of Defendants' fiduciary duties to the Hawaii Fund has no bearing on whether Defendants have assumed the role of functional fiduciaries for IMTEF by virtue of withholding IMTEF's purported contributions. Understandably, Defendants would be in a tough position if in fact they were forced to breach their fiduciary duties as to the Hawaii Fund in order to comply with their duties as functional fiduciaries as to IMTEF. But the issue here is limited to whether Plaintiffs pled adequate facts as to whether Defendants became *IMTEF's functional fiduciaries* and subsequently breached their duties as such. They have.

Plaintiffs allege that plan assets (i.e., contributions) have been paid to the Hawaii Fund, which is now "in control" of such assets by virtue of holding these contributions and failing to remit them to IMTEF pursuant to the CBA. This sufficiently pleads the requisite elements of a functional fiduciary for ERISA purposes. *See IT Corp.*, 107 F.3d at 1421 (concluding that a fiduciary claim is sufficiently alleged where the defendant had authority "to issue and accept checks"

with "a substantial amount of money" under its "control" "in the form of a bank account which it could deplete by writing checks").[6]

Thus, Defendants' Motion to Dismiss as to Count II is DENIED.

## B. Counts III-VI: Plaintiffs' State-Law Claims are Preempted by the LMRA

Section 301 of the LMRA states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The Supreme Court has held that section 301 should be "understood . . . as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). "'The [Supreme] Court subsequently held that this federal common law preempts the use of state contract law in CBA interpretation and enforcement.'" *Kobold v. Good Samaritan Reg. Med. Ctr.*, 832 F.3d 1024, 1032

---

[6] "The determination of whether one is a functional fiduciary is fact-based and generally inappropriate to resolve on a motion to dismiss." *See In re Austin Capital Mgmt., Ltd., Sec. & Empl. Retirement Income Sec. Act (ERISA) Litig.*, 2012 WL 6644623, at *8 (S.D.N.Y. Dec. 21, 2012); *see also Drzala v. Horizon Blue Cross Blue Shield*, 2016 WL 2932545, at *5 (D.N.J. May 18, 2016) ("Courts have consistently held that '[t]he determination of whether a person is a fiduciary is fact-based, and cannot be determined in a motion to dismiss.'") (quoting *Rispler v. Sol Splitz Co., Inc.*, 2007 WL 1926531, at *4 (E.D.N.Y. June 6, 2007)).

(9th Cir. 2016) (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001)).

Thus, a state law claim is preempted by section 301 of the LMRA when it "necessarily requires the court to interpret an existing provision of a [collective bargaining agreement] that can reasonably be said to be relevant to the resolution of the dispute." *Cramer*, 255 F.3d at 693; *see also Lingle v. Norge Div. of Magic Chef Inc.*, 486 U.S. 399, 405-06 (1988) ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted[.]"); *Kobold*, 823 F.3d at 1032 ("If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there.") (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)).

Here, Defendants argue that Plaintiffs' state law claims of conversion, breach of fiduciary duty, tortious interference with contractual relations, and unjust enrichment all turn on the interpretation of the CBA, and are thus preempted by the LMRA. Mot. at 25-26. The court agrees, and in fact, Plaintiffs conceded at the hearing that these claims are preempted by the LMRA. Instead, they seek leave to amend their Complaint to add a federal claim against Defendants alleging a violation of the LMRA. *See* Opp'n at 24-25. They explain they did not previously

bring an LMRA claim because the Fourth Circuit, where this case was initially filed, did not allow non-signatories to a CBA to bring an LMRA claim, whereas the Ninth Circuit does allow for such a claim. *Id.* (citing authority). Accepting that explanation, good cause exists to grant Plaintiffs leave to amend to file an LMRA claim. But, as amendment would be futile as to Plaintiffs' state law claims (Counts III-VI), they are DISMISSED with prejudice and without leave to amend.[7]

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss. As to Plaintiffs' ERISA claims (Counts I & II), the court GRANTS Defendants' Motion to Dismiss, with leave to amend, as to Count I (delinquent contributions), and DENIES as to Count II (breach of fiduciary duty). As to Plaintiffs' state law claims (Counts III-VI), the court GRANTS Defendants' Motion to Dismiss, without leave to amend.

//

//

//

---

[7] Because Plaintiffs' state law claims are preempted by the LMRA, the court need not decide whether these claims are independently preempted by ERISA. *See, e.g.*, *Bastien v. ABF Freight Sys. Inc.*, 2013 WL 1129400, at *3 (E.D. Cal. Mar. 18, 2013); *Jones v. Prudential Ins. Co. of Am.*, 2000 WL 274009, at *3, n.2 (E.D. Pa. Mar. 10, 2000).

The court, however, grants Plaintiffs leave to amend their Complaint to add an LMRA claim. Plaintiffs' amended complaint, if they choose to file one, must be filed no later than November 8, 2019.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 10, 2019.



 /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Int'l Masonry Training & Educ. Found., et al v. Haw. Masons' Training Fund, et al*, Civ. No. 19-00206 JMS-KJM, Order Granting In Part and Denying In Part Defendants' Motion to Dismiss, ECF No. 38.